# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

SANFORD v MICHIGAN

Docket No. 159636. Argued on application for leave to appeal May 6, 2020. Decided July 23, 2020.

Davontae Sanford brought an action in the Court of Claims against the state of Michigan, seeking compensation under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq.*, after another man confessed to the crimes committed in 2007 to which plaintiff had pleaded guilty when he was 15 years old: four counts of second-degree murder and carrying a firearm during the commission of a felony. On April 4, 2008, plaintiff was sentenced to concurrent terms of 37 to 90 years in prison for the murder convictions, plus a consecutive two-year term for the felony-firearm conviction, with credit for the 198 days he spent in the Wayne County Juvenile Detention Facility. After an investigation into the other man's confession and with the stipulation of the prosecutor, the circuit court vacated plaintiff's convictions and sentences on June 6, 2016, and plaintiff was released from the Michigan Department of Corrections on June 8, 2016. Defendant admitted that plaintiff was entitled to $408,356.16 in compensation for the 8 years and 61 days he spent in a state correctional facility pursuant to the WICA's damages formula set forth in MCL 691.1755(2)(a), but defendant disputed whether plaintiff was entitled to $27,124.02 in compensation for the 198 days he spent in local detention. The Court of Claims, MICHAEL J. TALBOT, J., held that the time plaintiff spent in local detention was not compensable under the WICA, and it awarded plaintiff $408,356.16. Plaintiff appealed as of right, and the Court of Appeals (SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.), affirmed the Court of Claims in an unpublished per curiam opinion issued April 9, 2019 (Docket No. 341879). Plaintiff sought leave to appeal in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other action. 505 Mich ___ (2020).

In an opinion by Justice ZAHRA, joined by Justices MARKMAN, VIVIANO, and CLEMENT, the Supreme Court, in lieu of granting leave to appeal, *held*:

Plaintiff was not entitled to compensation under the WICA for the time he spent in detention before his conviction because his preconviction detention was not "wrongful" under the statute. The Court of Appeals judgment was affirmed in result.

1. Under MCL 691.1753, an individual convicted under Michigan law and subsequently imprisoned in a state correctional facility for one or more crimes that he or she did not commit may bring an action for compensation against the state in the Court of Claims as allowed by the WICA. To bring an action for compensation under the WICA, a plaintiff must show by clear and

convincing evidence that he or she served at least part of the sentence for those crimes, that the conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty, and that new evidence demonstrates that the plaintiff did not perpetrate the crime.

2. The compensation provision of the WICA, MCL 691.1755(2), states in part that if a court finds that a plaintiff was wrongfully convicted and imprisoned, the court must award the plaintiff $50,000 for each year from the date the plaintiff was imprisoned until the date the plaintiff was released from prison. The most natural reading of MCL 691.1755(2) is that the adverb "wrongfully" modifies both of the verbs that immediately follow it: "convicted" and "imprisoned." Therefore, the imprisonment referred to in MCL 691.1755(2) must be "wrongful." Applying MCL 691.1755(2)(a) to calculate the amount of compensation owed, the relevant date for application of the compensation formula is the date on which a plaintiff was wrongfully imprisoned. Consequently, regardless of where a plaintiff's imprisonment took place, it must have been wrongful in order to be compensable under the WICA.

3. The WICA does not define the word "wrongful," but both lay and legal dictionaries define it as "unfair" or "unjust." Under these definitions, plaintiff was not wronged by his preconviction detention because it was neither unfair nor unjust under the WICA. The unfairness or injustice addressed by the WICA is the imprisonment of an innocent person following a conviction. The WICA provides no compensation for individuals who are detained and then subsequently acquitted or released without a conviction. Further, the WICA repeatedly refers to imprisonment that occurs after a conviction, which demonstrates that the Legislature did not intend to compensate a plaintiff for the time he or she spent in preconviction detention. This conclusion was consistent with the WICA's status as a waiver of the state's sovereign immunity, given that plaintiff's preconviction detention was purely the result of local decision-making.

Court of Appeals judgment affirmed in result.

Chief Justice McCormack, joined by Justices Bernstein and Cavanagh, dissenting, would have held that plaintiff was entitled to compensation for all the time during which he was imprisoned for a crime that he did not commit. She stated that for purposes of the WICA, detention is "wrongful" if a plaintiff can satisfy the statute's eligibility requirements, which plaintiff did, and she stated that the majority's interpretation of the WICA engrafts a new limitation on compensable detention that the statute's text does not support. She disagreed with the majority's blanket determination that pretrial detention is never unfair or unjust, noting that pretrial detention of an innocent person, like posttrial detention of an innocent person, is unfair and unjust, as this case illustrated. She agreed with the parties and the courts below that the question of compensation turns on the meaning of "imprisoned" in MCL 691.1755(2), and she would have held that under the rule in *People v Spann*, 469 Mich 904 (2003), the imprisonment described in MCL 691.1755(2)(a) refers to any period of detention or confinement in the context of the criminal proceeding that led to a wrongful conviction, whether in juvenile or adult detention facilities and whether before or after conviction. For these reasons, Chief Justice McCormack would have reversed the Court of Appeals and remanded this case to the Court of Claims for modification of the judgment award to compensate plaintiff for the 198-day period at issue in this appeal.

©2020 State of Michigan

# OPINION

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED July 23, 2020

STATE OF MICHIGAN

SUPREME COURT

DAVONTAE SANFORD,

      Plaintiff-Appellant,

v                                    No. 159636

STATE OF MICHIGAN,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

The issue presented in this case is one of first impression arising from the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq.*, a relatively new law that became effective March 29, 2017. The WICA waives sovereign immunity and creates a cause of action for certain people wrongfully imprisoned by the state of Michigan. The question before this Court is whether the WICA authorizes compensation for the time plaintiff spent in detention before he was wrongfully convicted of a crime. We conclude

that it does not, because plaintiff's preconviction detention was not "wrongful" for purposes of the WICA. We therefore affirm the result reached by the Court of Appeals.

## I. BASIC FACTS AND PROCEEDINGS

Plaintiff, who was 15 years old at the time, pleaded guilty to four counts of second-degree murder and carrying a firearm during the commission of a felony in connection with a highly publicized and notorious quadruple homicide in Detroit on September 17, 2007. On April 4, 2008, he was sentenced by the circuit court to concurrent terms of 37 to 90 years in prison for the murder convictions, plus a consecutive 2-year term for the felony-firearm conviction, with credit for the 198 days he spent in the Wayne County Juvenile Detention Facility.

In May 2015, the Michigan State Police reopened the investigation into the murders after a self-proclaimed hit man and convicted murderer confessed to them. This newly discovered evidence indicated that plaintiff had not committed the crimes to which he had pleaded guilty and of which he was convicted. As a result of this investigation and with the stipulation of the prosecutor, the circuit court vacated plaintiff's convictions and sentences on June 6, 2016, and plaintiff was released from the Michigan Department of Corrections (MDOC) on June 8, 2016. From April 8, 2008, to June 8, 2016, plaintiff spent 8 years and 61 days in the custody of the MDOC.

On July 27, 2017, plaintiff filed a complaint in the Court of Claims seeking compensation from defendant under the WICA. Defendant admitted that plaintiff was entitled to $408,356.16 in compensation for the 8 years and 61 days he spent in a state correctional facility pursuant to the WICA's damages formula set forth in MCL

2

691.1755(2)(a). But the parties disputed whether plaintiff was entitled to $27,124.02 in compensation for the 198 days he spent in local detention. The Court of Claims held that the time plaintiff spent in local detention is not compensable under the WICA, and it awarded plaintiff $408,356.16.

Plaintiff appealed as of right, and the Court of Appeals affirmed the Court of Claims in an unpublished per curiam opinion. Plaintiff sought leave to appeal in this Court, and in lieu of granting leave, we ordered oral argument on the application, directing the parties to file supplemental briefs addressing "whether the plaintiff is entitled to compensation under the Wrongful Imprisonment Compensation Act, MCL 691.1751 *et seq.*, for time spent in a juvenile facility before he was convicted of a crime."[1]

## II. STANDARD OF REVIEW

This Court reviews de novo questions of statutory interpretation.[2] The role of this Court in interpreting statutory language is to "ascertain the legislative intent that may reasonably be inferred from the words in a statute."[3] "The focus of our analysis must be the statute's express language, which offers the most reliable evidence of the Legislature's

[1] *Sanford v Michigan*, 505 Mich ___; 937 NW2d 117 (2020).

[2] *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014).

[3] *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008).

3

intent."[4]  When the statutory language is clear and unambiguous, judicial construction is limited to enforcement of the statute as written.[5]

## III.  ANALYSIS

Before March 29, 2017, people who were wrongfully imprisoned by the state of Michigan had no recourse against it for compensation.  "From the time of Michigan's statehood, this Court's jurisprudence has recognized that the state, as sovereign, is immune from suit unless it consents . . . ."[6]  The WICA is an express waiver of the state's sovereign immunity.  Specifically, MCL 691.1753 permits "[a]n individual convicted under the law of this state and subsequently imprisoned in a state correctional facility for 1 or more crimes that he or she did not commit" to "bring an action for compensation against this state in the court of claims as allowed by this act."  To do so, the plaintiff must show that he or she "served at least part of the sentence" for those crimes.[7]  A "state correctional facility" is defined in the WICA as "a correctional facility maintained and operated by the department of corrections."[8]

The WICA's section governing compensation and burden of proof, MCL 691.1755, states in pertinent part:

---

[4] *Badeen v PAR, Inc*, 496 Mich 75, 81; 853 NW2d 303 (2014).

[5] *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008).

[6] *Pohutski v City of Allen Park*, 465 Mich 675, 681; 641 NW2d 219 (2002), citing *Manion v State Hwy Comm'r*, 303 Mich 1, 19; 5 NW2d 527 (1942).

[7] MCL 691.1754(1)(a).

[8] MCL 691.1752(d).

(1) In an action under this act, the plaintiff is entitled to judgment in the plaintiff's favor if the plaintiff proves all of the following by clear and convincing evidence:

(a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.

(b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty. However, the plaintiff is not entitled to compensation under this act if the plaintiff was convicted of another criminal offense arising from the same transaction and either that offense was not dismissed or the plaintiff was convicted of that offense on retrial.

(c) New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial.

(2) Subject to subsections (4) and (5),[9] if a court finds that a plaintiff was wrongfully convicted and imprisoned, the court shall award compensation as follows:

(a) Fifty thousand dollars for each year from the date the plaintiff was imprisoned until the date the plaintiff was released from prison, regardless of whether the plaintiff was released from imprisonment on parole or because the maximum sentence was served. For incarceration of less than a year in prison, this amount is prorated to 1/365 of $50,000.00 for every day the plaintiff was incarcerated in prison.

In this case, plaintiff's entitlement to compensation is not in dispute, as defendant concedes that plaintiff has established the requirements set forth in MCL 691.1755(1). The

---

[9] MCL 691.1755(4) provides that "[c]ompensation may not be awarded under subsection (2) for any time during which the plaintiff was imprisoned under a concurrent or consecutive sentence for another conviction." MCL 691.1755(5) provides that "[c]ompensation may not be awarded under subsection (2) for any injuries sustained by the plaintiff while imprisoned." Neither subsection is applicable in this case.

5

narrow question presented relates to the scope of the compensation available under the WICA—specifically, whether under MCL 691.1755(2) plaintiff is entitled to compensation for the time he spent in detention before his conviction.

In analyzing these provisions, we must keep in mind that the WICA does not broadly direct courts to make those who were wrongfully imprisoned whole. Indeed, no amount of compensation could sufficiently remedy the deprivation of liberty suffered by those entitled to compensation under the WICA. But, as a matter of public policy, the Legislature has waived its sovereign immunity to provide a defined class of wrongfully imprisoned people a path to limited compensation. It is the exclusive province of the Legislature to define when and to what extent the state of Michigan relinquishes its sovereign immunity.

Plaintiff asserts that the WICA is properly considered a remedial statute, which calls for a liberal construction from this Court.[10] Defendant counters that the WICA constitutes a waiver of sovereign immunity, which must be strictly construed.[11] But, in giving meaning to the WICA, we decline to rely on the interpretive rules advocated for by either party. A " 'rule of liberal construction will not override other rules where its application would defeat the intention of the legislature or the evident meaning of an act.' "[12] And "[t]his Court has more recently tended to restrain calls for liberal or strict construction,

[10] See *Shallal v Catholic Social Servs of Wayne Co*, 455 Mich 604, 611; 566 NW2d 571 (1997).

[11] *Pohutski*, 465 Mich at 681 ("[T]he state, as sovereign, is immune from suit unless it consents, and . . . any relinquishment of sovereign immunity must be strictly interpreted.").

[12] *People v Prieskorn*, 424 Mich 327, 340; 381 NW2d 646 (1985), quoting 3 Sands, Sutherland Statutory Construction (4th ed), § 60.01.

6

opting instead for a reasonable construction of all legal texts."[13]  Consequently, we find no need to place a thumb on the scale in favor of one party over the other, and this Court will take a reasonable-construction approach in giving meaning to the unambiguous language of the WICA.

From this perspective, we turn to the issue of statutory interpretation.  We conclude that the WICA provides sufficient textual clues to support the Court of Appeals' holding that plaintiff may not be compensated for the time he spent in detention before his conviction, although we reach this conclusion for different reasons.

Plaintiff concedes that, in order to qualify for any compensation under the WICA, a plaintiff must serve some time in a state correctional facility, a requirement established by MCL 691.1753, MCL 691.1754(1), and MCL 691.1755(1)(a).  Plaintiff and defendant primarily disagree about the meaning of the term "imprisoned" as used in the compensation provision of MCL 691.1755(2)(a).  Plaintiff argues that dictionary definitions of the terms "imprison" and "imprisonment" are broad enough to encompass confinement in a local facility, meaning the entirety of his detention is compensable.  In contrast, defendant contends that "imprisoned" for purposes of this subsection refers solely to confinement in a state correctional facility.  The Court of Appeals agreed with defendant's interpretation, concluding that the "threshold requirement" of "imprisonment in a state correctional

---

[13] *McQueer v Perfect Fence Co*, 502 Mich 276, 293 n 29; 917 NW2d 584 (2018), citing *SBC Health Midwest, Inc v City of Kentwood*, 500 Mich 65, 71; 894 NW2d 535 (2017), and Corrigan & Thomas, *"Dice Loading" Rules of Statutory Interpretation*, 59 NYU Ann Surv Am L 231, 231-233 (2003).

facility" imposed after conviction "anchors" the amount of compensation referred to in MCL 691.1755(2)(a).[14] But this Court need not define the exact contours of the term "imprisoned" as used in MCL 691.1755(2)(a) in order to resolve this case. Regardless of which types of detention might generally qualify as "imprisonment," the WICA clearly requires that any compensable imprisonment be "wrongful," and preconviction detention is simply not wrongful in this context.

It cannot be disputed that the WICA is intended to compensate only those who were wrongfully imprisoned. Indeed, the act is named the "*wrongful imprisonment compensation act,*"[15] and it is described as an act "to provide compensation and other relief for individuals *wrongfully imprisoned* for crimes . . . ."[16] The particular compensation subsection at issue, MCL 691.1755(2), provides that a court shall award compensation under Subsection (2)(a) "if a court finds that a plaintiff was *wrongfully convicted and*

[14] *Sanford v Michigan*, unpublished per curiam opinion of the Court of Appeals, issued April 9, 2019 (Docket No. 341879), p 3.

[15] MCL 691.1751 (emphasis added).

[16] 2016 PA 343 (emphasis added). "Sometimes, too, the title or heading is the longhand reference for an elliptical text." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 222. To further elucidate this proposition, the authors of *Reading Law* rely on a remarkably apt opinion from this Court: *Burrows v Delta Transp Co*, 106 Mich 582; 64 NW 501 (1895). In *Burrows*, the title of the act at issue provided "that steam vessels shall provide fire screens, etc., while section 1 of the body of the act provide[d] that all vessels . . . shall have fire screens, etc. . . ." *Id*. at 605. This Court held that "the mere omission of the word 'steam' before the word 'vessels,' in section 1 of the act, . . . does not render the act repugnant in its terms. Clearly, it means all steam vessels . . . ." *Id*. at 605-606. The same is true here, as the WICA does not mean to allow compensation for any "imprisonment," but clearly means to compensate "wrongful imprisonment."

8

*imprisoned . . . .*"[17]  The most natural reading of MCL 691.1755(2) is that the adverb "wrongfully" modifies both verbs immediately following it, which are separated by the conjunctive "and."[18]  Thus, the imprisonment referred to in MCL 691.1755(2) must be "wrongful."  Applying MCL 691.1755(2)(a) to calculate the amount of compensation owed, the relevant date for application of the compensation formula is the date on which a plaintiff was *wrongfully* imprisoned.  This is an unremarkable conclusion, as even plaintiff's counsel acknowledged at oral argument that "wrongfully" modifies "imprisoned" in MCL 691.1755(2)(a).  Consequently, regardless of where a plaintiff's "imprisonment" took place, it must have been "wrongful" in order to be compensable under the WICA.

The WICA does not define the word "wrongful," so we turn to dictionary definitions of the term.[19]  "Wrongful," when accorded its common and approved usage as found in a

---

[17] Emphasis added.

[18] A general rule of statutory construction is that the meaning of a word or phrase "is determined by its context, the rules of grammar, and common usage."  Model Statute and Rule Construction Act, § 2; see also McCaffrey, Statutory Construction (1953), § 21; Crawford, Construction of Statutes (1940), § 196; 2A Sands, Sutherland Statutory Construction (4th ed), § 47.01, text and commentary; *Porto Rico R, Light & Power Co v Mor*, 253 US 345, 348; 40 S Ct 516; 64 L Ed 944 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all."); *Reading Law*, p 147 (explaining that, under the "Series-Qualifier Canon," "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series," regardless of whether the modifier is an adjective or an adverb) (boldface omitted).

[19] "An undefined statutory term must be accorded its plain and ordinary meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008), citing MCL 8.3a. "A lay dictionary may be consulted to define a common word or phrase that lacks a unique

lay dictionary,[20] means "wrong" and "unjust."[21]  The most relevant definition of "wrong" in that dictionary is "an injurious, unfair, or unjust act: action or conduct inflicting harm without due provocation or just cause."[22]  *Black's Law Dictionary* (11th ed) similarly defines "wrongful" in pertinent part as "[c]haracterized by unfairness or injustice."  Given that these definitions are substantially the same, we need not determine whether "wrongful" constitutes a legal term of art, but can rely on either dictionary.[23]

Under these definitions, plaintiff was not "wronged" by his preconviction detention.[24]  The preconviction detention was neither "unfair" nor "unjust" under the WICA.  The "unfairness or injustice" addressed by the WICA is the imprisonment of an innocent person *following* a conviction.  The WICA undisputedly provides no compensation for individuals who are detained and then subsequently acquitted or released

---

legal meaning." *Brackett*, 482 Mich at 276.  Courts should ordinarily use a dictionary that is contemporaneous with the statute's enactment. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 563 n 58; 866 NW2d 113 (2016).  In contrast, a legal term of art "must be construed in accordance with its peculiar and appropriate legal meaning." *Brackett*, 482 Mich at 276, citing MCL 8.3a.

[20] See MCL 8.3a.

[21] *Merriam-Webster's Collegiate Dictionary* (11th ed) (formatting altered).

[22] *Id.*

[23] If the definitions of a phrase are the same in both a lay dictionary and legal dictionary, it is unnecessary to determine whether the phrase is a term of art, and it does not matter to which type of dictionary this Court resorts. *Brackett*, 482 Mich at 276.

[24] We hold only that plaintiff is not entitled to compensation for the time he spent in detention before his conviction.  Because plaintiff does not specifically argue that he should be compensated for the time he spent in detention after his conviction but before sentencing or his placement in the custody of the MDOC, we decline to consider this issue.

without a conviction. Indeed, the WICA repeatedly refers to imprisonment *following* a conviction. For example, MCL 691.1753 creates a claim for individuals who are "convicted . . . and *subsequently* imprisoned." MCL 691.1754(1)(a) and MCL 691.1755(1)(a) require a plaintiff to show that he or she was "convicted," "sentenced to a term of imprisonment," and served part of "the sentence," clearly envisioning imprisonment subsequent to a conviction. MCL 691.1755(2) allows compensation for plaintiffs who were "wrongfully convicted and imprisoned." MCL 691.1757 refers to an individual who was "convicted, imprisoned, and released from custody." And MCL 691.1752(a) refers to charges that resulted in "the conviction and imprisonment of the plaintiff." All these provisions refer to imprisonment that occurs *after* a conviction, demonstrating that the Legislature did not intend to compensate a plaintiff for the time he or she spent in preconviction detention.

This conclusion that the WICA does not compensate plaintiff for the time he spent in detention before his conviction is consistent with the WICA's status as a waiver of the state's sovereign immunity. It makes sense that the Legislature would decline to compensate plaintiff for preconviction detention that was purely the result of local decision-making. The Legislature could have written the WICA as a wrongful-prosecution act or a wrongful-arrest-compensation act, but it did not do so. Rather, the "wrong" addressed by the WICA is imprisonment following a conviction, not preconviction detention. While it is unfortunate that plaintiff spent any time in detention before his wrongful conviction, a reading of the WICA in its entirety reveals that the Legislature did not intend to hold the state accountable to plaintiff for his preconviction detention.

11

## IV.  CONCLUSION

We hold that plaintiff may not be compensated under the WICA for the time he spent in detention before his conviction.  The WICA permits compensation for wrongful imprisonment, and plaintiff's preconviction detention was not "wrongful" under the WICA.  We therefore affirm the result reached by the Court of Appeals.

> Brian K. Zahra
> Stephen J. Markman
> David F. Viviano
> Elizabeth T. Clement

12

STATE OF MICHIGAN

SUPREME COURT

DAVONTAE SANFORD,

        Plaintiff-Appellant,

v                                        No. 159636

STATE OF MICHIGAN,

        Defendant-Appellee.

_____

MCCORMACK, C.J. (*dissenting*).

Everyone agrees that the plaintiff, Davontae Sanford, is eligible for compensation under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq*. The only disagreement is the period for which compensation is due: should the time that Mr. Sanford spent in a juvenile detention facility before and after his guilty plea be counted? The parties' disagreement on this question reflects their competing understandings of the word "imprisoned." The majority goes a different way. It answers the question in the negative because it believes Mr. Sanford's pretrial detention, unlike the time he served after his plea, was not "wrongful." While the Court defines "wrongful" as "characterized by unfairness or injustice," it's not clear to me why that definitional work matters. The majority makes no attempt to decide whether Mr. Sanford's pretrial detention was fair or just, instead declaring that only detention following conviction is "unfairness or injustice" according to the WICA.

I respectfully disagree. This interpretation of the WICA engrafts a new limitation on compensable detention that the statute's text does not support: the statute doesn't allow

us to decide whether we think Mr. Sanford's pretrial detention was wrongful, unfair or unjust. But even applying the majority's new eligibility hurdle, I disagree with the majority's blanket determination that pretrial detention is never unfair or unjust. Pretrial detention of an innocent person, like post-trial detention of an innocent person, is unfair and unjust. This case illustrates. And for the WICA, it is "wrongful" if a plaintiff can satisfy the statute's eligibility requirements, which everyone agrees Mr. Sanford has.

I agree with the parties and the courts below that the question of compensation turns on the meaning of "imprisoned" in the WICA's compensation section. See MCL 691.1755(2). Based on the statute's text, our precedent, the remedial nature of the act, and common sense, I conclude that Mr. Sanford was "imprisoned" every day that he was confined in a juvenile detention facility for a crime that he did not commit and is therefore due compensation for the time he was detained before and after his conviction. I would reverse the Court of Appeals judgment and remand this case to the Court of Claims for modification of the judgment award. I respectfully dissent.

## I. "WRONGFUL" CONVICTION AND IMPRISONMENT

The WICA defines *who is eligible for compensation* in MCL 691.1755(1) and *how an eligible plaintiff must be compensated* in MCL 691.1755(2). Two questions, two steps.

*Step One*. As for eligibility, "the plaintiff is entitled to judgment" if he or she proves, by clear and convincing evidence, that he or she was convicted of a crime, the conviction led to "imprisonment in a state correctional facility," the conviction was reversed or vacated as a result of new evidence showing the plaintiff "did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the

2

conviction," and the charges were subsequently dismissed or a retrial led to a not-guilty verdict. MCL 691.1755(1)(a) through (c).

*Step Two.* Once eligible for compensation, the statute directs how to calculate an award: "[I]f a court finds that a plaintiff was wrongfully convicted and imprisoned, the court shall award compensation as [set forth in MCL 691.1755(2)(a) through (c).]" MCL 691.1755(2). And in MCL 691.1755(2)(a), the WICA guarantees payment of $50,000 for every year that the eligible plaintiff was "imprisoned."

The question the parties asked us to decide is whether the WICA provides Mr. Sanford with compensation for the 198 days he was detained in a juvenile detention facility before, during, and after his trial.[1] Whether that time is compensable, they say, depends on how the Court should understand the term "imprisoned" in MCL 691.1755(2)(a). Not surprisingly, that is also how the Court of Appeals analyzed the case. Siding with the state, the panel concluded that the WICA provides compensation only for time that a person is imprisoned in a correctional facility operated by the Michigan Department of Corrections (MDOC) because "[t]he first threshold requirement in [MCL 691.1755(1)(a)], referring 'to a term of imprisonment in a state correctional facility' imposed after

---

[1] Mr. Sanford was arrested on September 18, 2003, convicted on March 18, 2004, sentenced on April 4, 2004, and transferred to the custody of the MDOC on April 8, 2004. The parties have focused their arguments on the 198-day period beginning with the date of arrest (September 18, 2003) and ending with the date of sentencing (April 4, 2004). As the majority's analysis shows, this period comprises pre-conviction time (between arrest and plea) and also time following conviction but before sentencing. It is not clear why Mr. Sanford's 198-day tally does not include the four days of detention between his sentencing and transfer to the MDOC. His interpretation of the WICA would require compensation for this period, because it was time that he was "imprisoned." Neither the state nor Mr. Sanford (nor the majority) has identified any reason for viewing these four days differently than the postconviction, presentencing period.

3

conviction, . . . anchors the amount of compensation, which is calculated 'from the date the plaintiff was imprisoned[.]' " *Sanford v Michigan*, unpublished per curiam opinion of the Court of Appeals, issued April 9, 2019 (Docket No. 341879), p 3. That is, blending Step One (eligibility) and Step Two (compensation calculation), the panel held that the eligibility requirement that a plaintiff serve time *in a state correctional facility* should be read into the compensation section's use of the term "imprisoned."

The majority takes a different path. The Court states that it is *not* deciding "the exact contours of the term 'imprisoned' as used in MCL 691.1755(2)(a) . . . ." In its place, the majority claims that the prefatory, eligibility-referencing clause of the compensation section—"if a court finds that a plaintiff was wrongfully convicted and imprisoned"— resolves this appeal. This clause, the majority asserts, effectively adds another eligibility requirement: once eligible for compensation, the WICA then limits compensation only for detention that is "wrongful." The majority defines "wrongful" to mean "characterized by unfairness or injustice." And because "[t]he WICA undisputedly provides no compensation for individuals who are detained and then subsequently acquitted or released without a conviction," the majority concludes that the only "unfairness or injustice" that the WICA contemplates "is the imprisonment of an innocent person *following* a conviction."

I respectfully disagree. What made *all* of Mr. Sanford's detention "wrongful" for purposes of the WICA was the fact that he satisfied the act's eligibility requirements. And he satisfied those requirements because he was innocent before and after his conviction. The majority has conflated the eligibility requirements with the compensation determination.

4

The WICA's eligibility section requires a plaintiff to make a specific showing about the wrongfulness of his or her detention. It requires the plaintiff to prove that he or she was convicted of a crime, the conviction led to imprisonment in a state correctional facility, the conviction was reversed or vacated as a result of new evidence showing that the plaintiff did not commit the crime, and the charges were subsequently dismissed or a retrial led to a not-guilty verdict. MCL 691.1755(1)(a) through (c). The plaintiff who establishes these elements is a plaintiff who "is entitled to judgment" in his or her favor. MCL 691.1755(1).

The next section of the statute is the compensation section. It starts with this introductory clause: "Subject to [MCL 691.1755(4) and (5)], *if a court finds that a plaintiff was wrongfully convicted and imprisoned*, the court shall award compensation as follows . . . ." MCL 691.1755(2) (emphasis added). This prefatory language refers to a plaintiff who meets the eligibility requirements in MCL 691.1755(1); it describes a plaintiff who, like Mr. Sanford, "is entitled to judgment" under the WICA and then directs the court to award compensation to this plaintiff "as follows . . . ."

The majority's contrary interpretation confuses the act's eligibility requirements with its compensation formula. That is, the term "wrongfully" in MCL 691.1755(2) does not layer on a new eligibility requirement, nor does it limit an eligible plaintiff's compensation based on a court's subjective sense of whether some or all of the plaintiff's detention was "fair" or "just."

In concluding otherwise, the majority appeals to its sense of fairness—why should Mr. Sanford receive compensation for pretrial detention when that remedy is not available for innocent defendants who are acquitted at trial? The answer, of course, is that Mr. Sanford satisfied the act's specific eligibility requirements. And that result is hardly

5

remarkable. After all, the WICA, like any legislation, is the result of numerous policy choices, many of which reflect compromises. For example, by conditioning eligibility on "imprisonment in a state correctional facility," the Legislature excluded from compensation people who are (wrongly) convicted of misdemeanor offenses, even when that conviction results in a term of imprisonment in a local detention facility. And by excluding people who are never convicted at all, perhaps the Legislature recognized that a verdict of "not guilty" is not the same as "innocent," and asking courts to determine whether an acquitted-defendant-turned-WICA-plaintiff is innocent would be difficult. That decision would be in accord with the requirement that a WICA plaintiff present new evidence demonstrating that he or she did not perpetrate the crime for which he or she was convicted. See MCL 691.1755(1)(c). Or perhaps the WICA's eligibility requirements reflect the view that a conviction can be uniquely harmful, in ways that a criminal trial ending in an acquittal is not.

We don't know what led to the Legislature's decision to fashion the particular eligibility requirements it did, but they are clear. The Legislature could have said that the act's eligibility requirements also limit what part of a plaintiff's detention is compensable. Or it could simply have said that no pretrial detention is compensable, as the majority says today. But it didn't. So I wouldn't either. I would stick with the statute's text rather than import the eligibility requirements to its compensation formula through a prefatory clause.[2]

---

[2] The majority thinks it "makes sense" that the Legislature would not provide compensation for pretrial detention of an innocent person because that detention is the result of "local decision-making." But of course postconviction detention is also the result of local decision-making in every case where pretrial detention was the result of local decision-making. That is, the investigation of crimes in this state is typically performed by local

6

There are other indications that the majority's interpretation is not the best one. As the majority recognizes, "wrongful" can mean "characterized by unfairness or injustice." Yet it views pretrial detention as categorically *not* wrongful, no matter the facts. That is, all pretrial detention is fair and just, as far as the statute is concerned. But consider a hypothetical plaintiff who discovers, years after conviction and well into a long sentence, that the state had withheld exculpatory evidence from the plaintiff's arrest. This hypothetical plaintiff's incarceration was unjust and unfair from the moment this evidence was withheld, if not earlier. I believe most would agree. But the majority holds that this hypothetical plaintiff would not be entitled to any compensation for the time he or she served before being convicted, because such detention was not "wrongful."

The weakness in the majority's rule is also showcased by its incomplete analysis. The Court does not resolve whether Mr. Sanford is due compensation for the time between his conviction and sentencing (or between his sentencing and transfer to MDOC). The majority identifies his *conviction* as the moment Mr. Sanford's detention became "wrongful," but the Court refuses to answer whether Mr. Sanford's detention before

---

police, and prosecuted in our district and circuit courts by county prosecutors. So when a criminal defendant is convicted of a crime and sentenced to a term of imprisonment in a state correctional facility—imprisonment that the majority agrees is compensable—that imprisonment is the result of local decision-making. And that is what happened here: the very same local decision-makers asked a court to detain Mr. Sanford before and after his plea.

Yes, the WICA operates as a waiver of state sovereign immunity, in that the Legislature has now permitted suit against the state to provide redress for lost liberty where before it did not. But had the Legislature intended to provide a remedy only for convictions that resulted from "state" decision-making, it would have limited the cause of action to plaintiffs whose cases were prosecuted by the state's Attorney General.

7

sentencing was "wrongful" under the WICA. The majority acknowledges this gap in its analysis but declines to address it, saying only that Mr. Sanford "does not specifically argue that he should be compensated for the time he spent in detention after his conviction but before sentencing or his placement in the custody of the MDOC . . . ."

But Mr. Sanford has always argued that his entire period of detention (before and after conviction) is compensable. True, Mr. Sanford does not present an argument *specific* to the postconviction, presentencing period. But that makes sense because throughout this litigation, the state and the courts have viewed the compensation issue as turning on the meaning of "imprisoned" in MCL 691.1755(2). And what is left for him to argue? The majority says that "the 'wrong' addressed by the WICA is imprisonment following a conviction," and Mr. Sanford has always argued that he was imprisoned between conviction and sentencing. The Court does not have to accept either party's argument as the correct view of the law, but its decision today—that compensation is limited to the periods of detention that are "wrongful"—should be applied to fully resolve Mr. Sanford's claim. And applying what appears to be the majority's view of when imprisonment becomes wrongful—the moment of his conviction—I do not understand why the majority declines to grant Mr. Sanford partial relief in this appeal, for the period following his conviction and before his sentence and transfer to the MDOC.

## II. THE WICA PROVIDES COMPENSATION FOR ALL OF THE TIME THAT MR. SANFORD WAS "IMPRISONED"

This leads to the question briefed by the parties and decided by the courts below: the meaning of "imprisoned" in the compensation section of the WICA.

8

Neither "imprisoned" nor its variants ("imprisonment" and "prison") are defined by the WICA, so the parties offer competing dictionary definitions. Mr. Sanford says that these terms refer to state-enforced detention or confinement in the context of a criminal proceeding, regardless of when or where that detention or confinement occurs. See *Black's Law Dictionary* (11th ed) (defining "prison" as "[a] building or complex where people are kept in long-term confinement as punishment for a crime, *or in short-term detention while waiting to go to court as criminal defendants*") (emphasis added); *Black's Law Dictionary* (6th ed) (defining "imprison" as "[t]o put in a prison; to put in a place of confinement. To confine a person, or restrain his liberty, in any way"). The state counters with its own definitions, arguing that these terms refer to the confinement of *convicted* people and only when that confinement occurs at a facility operated by the state (and not, for example, a county jail). See, e.g., *Black's Law Dictionary* (7th ed) (defining "prison" as "[a] state or federal facility of confinement for convicted criminals, esp. felons"). Both parties say that their interpretation reflects the WICA's plain and ordinary meaning.

We have addressed this question, and our answer supports Mr. Sanford's position. In *People v Spann*, 469 Mich 904 (2003), this Court considered MCL 333.7401(3), the consecutive-sentencing provision of the controlled substances act (CSA), MCL 333.7401 *et seq*. Section 7401(3) creates an exception to Michigan's general preference for concurrent sentencing; it allows the trial court to make a sentence for certain violations of the CSA consecutive with "any term of imprisonment imposed for the commission of another felony." The question in *Spann* was whether the CSA's reference to a "term of imprisonment" included a jail sentence. Unlike the state's position here, the prosecution in *Spann* argued that "term of imprisonment" unambiguously referred to incarceration in a

9

correctional facility operated by the MDOC *and* incarceration in a county jail. The Court of Appeals agreed that the statutory language encompassed a term of incarceration in the county jail. *People v Spann*, 250 Mich App 527, 529; 655 NW2d 251 (2002). But the panel viewed it as a close question, stating that "the language of subsection 7401(3) is susceptible to differing interpretations" because "term of imprisonment" could arguably mean either "confinement in a state prison" or, more broadly, " '[t]he state of being confined; a period of confinement.' " *Spann*, 250 Mich App at 530-531, quoting *Black's Law Dictionary* (7th ed). It resolved the interpretive issue by reasoning that a broader interpretation—that including a sentence of jail incarceration—would further the legislative purpose of "deter[ring] controlled substance crimes for the protection of the public health, safety, and welfare." *Id.*

We affirmed by order. *Spann*, 469 Mich at 904. But we disagreed with the Court of Appeals that the phrase "term of imprisonment" was ambiguous. We explained that

> [u]ndefined statutory terms should be given their plain and ordinary meanings, for which dictionaries may be consulted. . . . Further, the Legislature often has used the term 'imprisonment' to mean confinement in jail as well as confinement in prison. . . . Thus, while declaring the term ambiguous, even the analysis used by the Court of Appeals in this case demonstrated that the statute is not ambiguous. [*Id*. at 905.]

Our decision in *Spann* supports Mr. Sanford's position that he is owed compensation for the entire 198-day period he spent incarcerated before being transferred to the MDOC, because it was all time that he was confined for crimes he did not commit. MCL 691.1755(2)(a) directs that the compensable period begins "the date the plaintiff was

10

imprisoned." In Mr. Sanford's case, that date is September 18, 2003, the day of his arrest, which marked the beginning of his continued imprisonment until his release in June 2016.[3]

The state also argues that language from the eligibility section of the WICA informs the meaning of "imprisonment" in the compensation section. Because the Legislature conditions eligibility in MCL 691.1755(1)(a) on a plaintiff's having been "sentenced to a term of imprisonment *in a state correctional facility*," the argument goes, the Court should read that same limitation into "imprisoned" when interpreting the compensation section, MCL 691.1755(2)(a). But this turns on its head the principle that "when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011), citing *Russello v United States*, 464 US 16, 23; 104 S Ct 296; 78 L Ed 2d 17 (1983).

---

[3] Indeed, our "jail credit" statute, MCL 769.11b, required the trial court to grant Mr. Sanford credit for time served in the juvenile detention facility "prior to [his] sentencing because of being denied or unable to furnish bond for the offense of which he is convicted . . . ." By requiring the court to credit time spent detained before trial against a sentence imposed after conviction, the Legislature has shown that pre- and postsentencing detention comprise one continuous sentence of incarceration.

In Mr. Sanford's case, the jail credit was for a period of around 6$^1/_2$ months. But as amici point out, it is not uncommon for criminal defendants to be detained upwards of a year while awaiting trial, and in some jurisdictions far longer than that. It seems unlikely that the Legislature intended eligible plaintiffs to receive more or less compensation depending on the speedy trial practice of the jurisdiction in which they are prosecuted. In the context of the WICA, and the remedy it provides to people who are convicted of crimes they did not commit, pretrial imprisonment is no less wrongful, or less deserving of compensation, than the postconviction imprisonment that succeeds it.

11

And what's more, if the Legislature intended the term "prison" and its variants to refer only to a "correctional facility maintained and operated by the department of corrections," see MCL 691.1752(d) (defining "state correctional facility" for the WICA), then there is no reason for it to have referred to both prisons and state correctional facilities, as it did in MCL 691.1755. Compare MCL 691.1755(1)(a) (referring to "a term of imprisonment *in a state correctional facility*") with MCL 691.1755(2)(a) (explaining that the $50,000-per-year award "is prorated to 1/365 of $50,000.00 for every day the plaintiff was incarcerated *in prison*").[4] In other words, the state's contextual argument would have this Court interpret these terms interchangeably, ignoring the Legislature's precise language in MCL 691.1755(1)(a), describing who is eligible for compensation under the WICA, and its markedly broader language in MCL 691.1755(2)(a), describing what compensation is due for those who are eligible to receive it.

For all these reasons, I believe the imprisonment described in MCL 691.1755(2)(a) refers to any period of detention or confinement in the context of the criminal proceeding that led to a wrongful conviction, whether in juvenile or adult detention facilities, and whether before or after conviction. That interpretation tracks this Court's rule that "imprisonment" unambiguously refers to confinement in facilities other than a state correctional facility operated by the MDOC. *Spann*, 469 Mich at 905. It also gives meaning to the Legislature's choice to limit compensation eligibility to people who are convicted of a crime and "imprisoned in a state correctional facility" but to calculate

---

[4] "Prison" and "state correctional facility" are the only terms used in the WICA to describe a location where "imprisonment" might occur. Absent from the act are words like "jail" and "juvenile detention facility."

compensation for time that an eligible plaintiff was "imprisoned." It explains the Legislature's decision to use the statutorily defined term "state correctional facility" while also using the undefined word "prison." It follows our state's longstanding rules governing sentencing, under which a criminal defendant's pretrial detention is credited to the postconviction sentence. And finally, it aligns with the remedial purpose of the WICA, which is to provide people convicted of crimes they did not commit with compensation for the great wrong done to them.

## III. CONCLUSION

I believe Mr. Sanford is entitled to compensation for all of the time during which he was "imprisoned" for a crime that he did not commit, which includes the 198-day period at issue in this appeal. I would reverse the Court of Appeals and remand this case to the Court of Claims for modification of the judgment award to account for this time. I respectfully dissent.

Bridget M. McCormack
Richard H. Bernstein
Megan K. Cavanagh

13